**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| SOUTHSTAR FINANCIAL, LLC,  )<br>                                                            )<br>                    Plaintiff,                 )<br>                                                            )     No. 2:21-cv-02511-DCN<br>         vs.                                            )<br>                                                            )     **ORDER**<br>T-ZONE HEALTH, INC.; FRESH START  )<br>2021, LLC; 10 MINUTE FITNESS, INC.; and  )<br>TZVI HENRY PERSHIN,                     )<br>                                                            )<br>                    Defendants.             )<br>_____)| |

The following matter is before the court on defendants Fresh Start 2021 ("Fresh Start") and TZVI Henry Pershin's ("Pershin") motion to dismiss, ECF No. 7. For the reasons set forth below, the court grants the motion.

**I.   BACKGROUND**

SouthStar and certain of its affiliated entities provide various financial services to commercial businesses, including invoice financing, factoring of accounts receivable, and the collection of receivables. On May 18, 2019, SouthStar entered into a factoring and security agreement (the "Factoring Agreement") with defendant 10 Minute Fitness ("10 Minute") to provide financing to 10 Minute to purchase fitness and health equipment from defendant T-Zone Health, Inc. ("T-Zone"). SouthStar alleges that under the Factoring Agreement, it took a first priority lien on all of the property, including inventory, of 10 Minute. Beginning in early 2020 and in connection with the outbreak of the COVID-19 pandemic, 10 Minute began having cash flow problems and was unable to fulfill its obligations to SouthStar. Around this time, 10 Minute allegedly breached the Factoring Agreement. SouthStar filed a confession of judgment against 10 Minute on

1

February 17, 2020, and the Charleston County Sheriff's office returned the execution of the judgment nulla bona on May 4, 2021. On March 3, 2021, 10 Minute allegedly sold 2,000 aerobic fitness machines encumbered by SouthStar's lien to Fresh Start, in violation of SouthStar's rights under the Factoring Agreement. According to SouthStar, 10 Minute was insolvent at the time of the sale and sold the equipment for substantially less than its actual value.

On August 9, 2021, SouthStar filed the instant action against T-Zone, 10 Minute, Fresh Start, and Fresh Start's owner, Pershin (collectively, "defendants"). ECF No. 1, Compl. On September 28, 2021, Fresh Start and Pershin filed a motion to dismiss for lack of personal jurisdiction. ECF No. 7. On October 12, 2021, SouthStar responded, ECF No. 10, and on October 19, 2021, Fresh Start and Pershin replied, ECF No. 12. As such, this motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, when a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs, 886 F.2d at 676. To determine whether a plaintiff has satisfied this burden, the

court may consider both the defendant's and the plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor," and "assuming [plaintiff's] credibility." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993); Combs, 886 F.2d at 676. The court, however, need not "credit conclusory allegations or draw farfetched inferences." Masselli, 215 F.3d 1320 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### III.   DISCUSSION

Fresh Start and Pershin contend that the court lacks personal jurisdiction over them and seek dismissal from this action pursuant to Rule 12(b)(2). Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). Consequently, the only question before the court is whether the exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F.Supp.2d 323, 328 (D.S.C. 1999).

Personal jurisdiction over a nonresident defendant can be either specific or general. See ESAB, 126 F.3d at 623–24. General jurisdiction is exercised on the basis of the defendant's "continuous and systematic" contacts within the state, even when the suit is unrelated to the defendant's contacts within that state. See S.C. Code Ann. § 36-2-802; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). SouthStar does not argue that Fresh Start or Pershin are subject to general jurisdiction in South Carolina, and therefore the court need not address this potential basis of personal jurisdiction.

Specific jurisdiction is exercised when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales, 466 U.S. at 416. The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether the defendant purposely availed itself of the privileges of conducting activities in the forum state and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claims arise out of or relate to those forum-state activities, and (3) whether the exercise of jurisdiction is constitutionally reasonable. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)). To show that the exercise of specific jurisdiction over a defendant comports with due process, a plaintiff "must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016). SouthStar argues that the actions that Fresh Start and Pershin directed at SouthStar and their participation in an alleged conspiracy with 10 Minute and T-Zone subject them to personal jurisdiction in South Carolina. The court discusses each

of SouthStar's alleged grounds for specific jurisdiction over Fresh Start and Pershin in turn, ultimately finding both lacking.

### A. Actions Directed Towards SouthStar

SouthStar first argues that Fresh Start and Pershin are subject to specific jurisdiction in South Carolina because they "interacted with SouthStar in South Carolina, directed tortious actions into this state and caused tortious injury in South Carolina sufficient to establish minimum contacts." ECF No. 10 at 11. Despite these broad assertions that Fresh Start and Pershin had contacts with South Carolina, SouthStar has failed to allege facts to support specific jurisdiction on these grounds.

To begin, SouthStar only alleges one fact to show that Fresh Start and Pershin "interacted with SouthStar in South Carolina"—Pershin's participation in brokering a subordination agreement dated June 18, 2019 between SouthStar and non-party Fox Capital Group, LLC ("Fox Capital") (the "Subordination Agreement"). ECF No. 10 at 11. Fox Capital is another financer of 10 Minute and an alleged affiliate of Pershin's.[1] According to SouthStar, the purpose of the Subordination Agreement was to ensure that SouthStar held a first-priority perfected security interest in 10 Minute's assets and collateral, which SouthStar required before it would provide financing to 10 Minute. The Subordination Agreement placed Fox Capital's security interest in 10 Minute below that of SouthStar. SouthStar argues that Pershin's participation in the negotiation of the Subordination Agreement gave him notice that SouthStar had a first-priority security interest in 10 Minute's assets. Nevertheless, SouthStar fails to show how Pershin's participation equates to a contact with South Carolina.

---

[1] SouthStar does not allege that Fox Capital is a South Carolina entity.

SouthStar maintains that because it is a South Carolina entity and party to the Subordination Agreement, Pershin's participation is sufficient to subject him to personal jurisdiction in South Carolina.  Not so.  As the Supreme Court explained, "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."  Burger King, 471 U.S. at 478.  To hold otherwise would improperly "allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  Walden v. Fiore, 571 U.S. 277, 289 (2014).  Here, SouthStar's argument is even less compelling than the question addressed in Burger King; SouthStar does not allege that Pershin contracted with a South Carolina entity, but that he merely facilitated a contract between an out-of-state company and one in South Carolina.  SouthStar's allegations fall far short of showing how Pershin's conduct related to the Subordination Agreement was directed at South Carolina.  SouthStar does not allege that Pershin initiated communications with SouthStar regarding the Subordination Agreement, and as a practical matter, it is more likely that SouthStar would have initiated conversations with Pershin regarding an agreement to ensure SouthStar held a first-priority interest, over Fox Capital's interest, in 10 Minute's assets.  SouthStar likewise does not allege that Pershin traveled to South Carolina.  Nor does SouthStar allege that Pershin was a party to the agreement or that the agreement envisioned Pershin's performance of any obligations under the agreement in South Carolina.  At best, SouthStar simply alleges that Pershin sent emails to its representatives during the Subordination Agreement negotiations.  However, Pershin's alleged emails to a South Carolina entity during those negotiations fall short of establishing purposeful availment

of the privilege of conducting activities in South Carolina. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451–52 (4th Cir. 2000) (refusing to extend personal jurisdiction in Virginia over a foreign defendant, even though the defendant contracted with a Virginia corporation after telephone calls, letters and faxes to Virginia, because the "bulk of services" were not performed in Virginia); Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 478–79 (4th Cir. 1993) (finding the defendant's contacts with Maryland "insubstantial," even though the parties made a contract in Maryland, the foreign defendant purposefully initiated the contract discussions, and the defendant engaged in several weeks of negotiations involving letters, faxes, and telephone calls to Maryland). Therefore, the court does not find Pershin's alleged involvement in the Subordination Agreement to be a sufficient contact with South Carolina to support jurisdiction merely because a South Carolina resident was a party to that agreement.

Further, even if Pershin's involvement in the Subordination Agreement between SouthStar and Fox Capital did amount to a sufficient minimum contact with South Carolina, SouthStar fails to explain how the instant action arises from or relates to that involvement or agreement. SouthStar is not alleging breach of the Subordination Agreement in this action nor is SouthStar suing Fox Capital in this action. Rather, SouthStar's claims in this action challenge an entirely distinct transaction between 10 Minute and Fresh Start—the Consignment Agreement involving the sale of inventory that SouthStar claims it had a security interest in. The mere fact that the Subordination Agreement may have put Pershin on "notice" of SouthStar's first-priority security interest in that inventory does not satisfy the "arise out of" or "relate to" requirement. See Ford

7

Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1026 (2021); Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1780 (2017) ("In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum") (emphases in original). Because SouthStar has not made a prima facie showing that its claims in this action arise from or relate to Pershin's involvement in the Subordination Agreement, such involvement does not support the court's exercise of specific jurisdiction over Fresh Start or Pershin.

Finally, SouthStar fails to make a prima facie showing of specific jurisdiction based on any tortious actions Fresh Start or Pershin allegedly directed into South Carolina or tortious injury they allegedly caused therein. According to SouthStar, "the Consignment Agreements between Fresh Start and 10 Minute were specifically designed so 10 Minute, T-Zone, Fresh Start and Pershin could receive the inventory for less than its value and deprive SouthStar of its collateral by moving it to another entity." ECF No. 10 at 12. Moreover, SouthStar alleges that the payment structure of the Consignment Agreement "ensured that SouthStar would not receive any funds from the sale of SouthStar's inventory." Id. Accordingly, SouthStar maintains that Fresh Start and Pershin's conduct in connection with the Consignment Agreement "caused injury to SouthStar here in South Carolina, and the scheme was targeted at SouthStar, a South Carolina company." Id. This argument is unpersuasive.

Even if SouthStar felt the effect of the Consignment Agreement in South Carolina, that effect is not enough to establish personal jurisdiction over Fresh Start and Pershin. See Walden, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). The Supreme Court has specified that while the

8

place of a plaintiff's residence and injury may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit, they cannot create the defendant's contact with the forum.  Ford Motor Co., 141 S. Ct. at 1031–32 (citing Walden, 571 U.S. at 290); see Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 230 (4th Cir. 2019) (explaining that while "in-forum effects of out-of-forum conduct can constitute minimum contacts with the forum sufficient to support personal jurisdiction," such effects "must create a connection to the forum, not just to parties who happen to live there," and specifying that such effects must be "substantial") (emphasis in original).  The proper question is whether the defendant's own conduct connects him or her to the forum in a meaningful way.  Here, SouthStar's claimed injury does not evince such a connection.  The alleged injury occurred in South Carolina simply because SouthStar is incorporated and operates in this state.  SouthStar does not allege that Fresh Start or Pershin entered into the Consignment Agreement in South Carolina, that the agreement involved the sale of goods or performance of any obligations in South Carolina, or that any South Carolina residents were party to the agreement.  According to Pershin's affidavit, the inventory contemplated in the Consignment Agreement remained in Texas both before and after the sale.  ECF No. 7-2, Pershin Aff. ¶ 4.  The court finds that none of Fresh Start or Pershin's conduct in the Consignment Agreement was connected to South Carolina; at best, their out of state conduct merely caused some incidental injury to an entity in this state.  Fresh Start and Pershin "cannot be haled into the forum simply because [they] knew that [their] conduct would have incidental effects there," and as such, this basis for jurisdiction fails.  Hawkins, 935 F.3d at 230.

### B. Conspiracy

SouthStar next argues that the court has personal jurisdiction over Fresh Start and Pershin because it has jurisdiction over their co-conspirators, 10 Minute and T-Zone. The Fourth Circuit recognizes the "theory of obtaining personal jurisdiction by the showing of a conspiracy." Lolavar v. de Santibanes, 430 F.3d 221, 229 (4th Cir. 2005). Under this theory, "a conspirator not present in the forum State will, nevertheless, be adjudged to have had a personal presence in the forum State by means of adequate minimum contacts of the other conspirators therein." Id.; accord Hammond v. Butler, Means, Evins & Browne, 388 S.E.2d 796, 798 (S.C. 1990) ("[An] out-of-state defendant may be subject to jurisdiction under a long-arm statute on the theory that his co-conspirator conducted activities in a particular state pursuant to the conspiracy."). The co-conspirator theory for the exercise of personal jurisdiction requires the plaintiff to "make a threshold showing that a conspiracy existed and that the defendants participated therein." Lolavar, 430 F.3d at 229. To succeed under this theory, SouthStar must "make a plausible claim (1) that a conspiracy existed; (2) that [Fresh Start and Pershin] participated in the conspiracy; and (3) that a co-conspirator's activities in furtherance of the conspiracy had sufficient contacts with [South Carolina] to subject that conspirator to jurisdiction in [South Carolina.]" Unspam Techs., Inc. v. Chernuk, 716 F.3d 322, 329 (4th Cir. 2013). SouthStar must offer more than "bare allegations" to satisfy these requirements and must "plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." Id. (citing Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031 (D.C. Cir. 1997)).

In its complaint, SouthStar alleges that all defendants in this case engaged in a conspiracy in two respects. First, defendants "did conspire and act in concert to enter a sham transaction" to circumvent SouthStar's lien on 10 Minute's assets. Compl. ¶ 63. The alleged "sham transaction" SouthStar refers to is the Consignment Agreement whereby 10 Minute sold the fitness machines to Fresh Start for, according to SouthStar, less than fair market value. Second, defendants "did conspire and work in concert to wrongfully and unlawfully assert pressure" on SouthStar by filing lawsuits against it. Id. ¶ 64. In this allegation, SouthStar refers to two lawsuits filed by T-Zone in this court against SouthStar, in which T-Zone claims that SouthStar is liable for certain invoices T-Zone submitted to 10 Minute for exercise equipment inventory. T-Zone filed the first action on July 2, 2020, T-Zone Health, Inc. v. SouthStar Capital, LLC, No. 2:20-cv-02519-DCN (D.S.C. 2020) (the "First Action"), and the second on May 26, 2021, T-Zone Health, Inc. v. SouthStar Capital, LLC, No. 2:21-cv-01555-DCN (D.S.C. 2021) (the "Second Action"). Upon being served with the Second Action, SouthStar and its representatives allegedly contacted 10 Minute and its owner, chief executive officer, and president, Ian Cruickshank ("Cruickshank"), to discuss 10 Minute's knowledge of the T-Zone lawsuits against Southstar. According to SouthStar, Cruickshank stated during the phone conversation that if SouthStar agreed to provide a certain amount of additional financing to 10 Minute to jump start its operations again, T-Zone's Second Lawsuit "would go away." Compl. ¶ 33. Based on Cruickshank's statements, SouthStar believes that 10 Minute, Pershin, and Fresh Start were involved in a conspiracy with T-Zone to file the lawsuits against SouthStar to pressure it to continue financing 10 Minute. In its

response to the motion to dismiss, SouthStar elaborates on the conspiracy alleged in the complaint and explains it as follows:

> First, T-Zone filed the Second Lawsuit against SouthStar in this Court on May 26, 2021 in agreement with 10 Minute, Fresh Start and Pershin to coerce SouthStar to overadvance additional funds to 10 Minute so it could purchase and order more machines from T-Zone, and for financial gain of all the Defendants. Second, the Defendants agreed to and acted in concert to effectuate the fraudulent conveyance of the Inventory under the Consignment Agreements to deceive SouthStar, and attempt to fraudulently convey SouthStar's property for less than valuable consideration in order to subvert SouthStar's first priority security interest. Third, the Defendants designed the payment scheme under the Consignment Agreements to divert payments away from SouthStar. Fourth, T-Zone agreed to and have already begun ordering parts and refurbishing the Inventory for purposes of resale to the financial gain of the Defendants, and to the detriment of SouthStar.

ECF No. 10 at 15–16. Based on these allegations and those set forth in the complaint, SouthStar fails to make a threshold showing to satisfy each of the three elements of a conspiracy basis for personal jurisdiction. Accordingly, SouthStar cannot manufacture personal jurisdiction over Fresh Start and Pershin by alleging a conspiracy among defendants.

### 1. Existence of a Conspiracy

With respect to the first element of a conspiracy theory of personal jurisdiction, SouthStar fails to make a plausible claim that a conspiracy existed. Per the South Carolina Supreme Court's recent decision in Paradis v. Charleston County School District, to assert a civil conspiracy claim, a plaintiff must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately result to the plaintiff. 861 S.E.2d 774, 780 (S.C. 2021). A plaintiff "must plead additional facts in furtherance of the conspiracy

separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." Coker v. Norwich Com. Grp., Inc., 2021 WL 4037472, at *5 (D.S.C. Sept. 3, 2021).

SouthStar's conspiracy claim fails for at least two reasons. First, SouthStar has not sufficiently alleged or provided a factual basis to show that defendants acted with an intent to harm it. "Civil conspiracy requires a specific intent to injure the plaintiff." Sizemore v. Georgia-Pac. Corp., 1996 WL 498410, at *13 (D.S.C. Mar. 8, 1996) (citing Bivens v. Watkins, 437 S.E.2d 132, 134 (S.C. Ct. App. 1993)), aff'd sub nom. Sizemore v. Hardwood Plywood & Veneer Ass'n, 114 F.3d 1177 (4th Cir. 1997). Some evidence that the alleged conspirators "acted with malice towards" the plaintiff is required. Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc., 992 F.2d 59, 63 (4th Cir. 1993) (applying South Carolina law). Where, for example, alleged conspirators acted out of a general desire to make a profit rather than to harm the plaintiff, a claim for civil conspiracy cannot lie. Bivens, 437 S.E.2d at 136. As SouthStar itself puts it, defendants acted with an intent to further the "financial gain of the Defendants." ECF No. 10 at 16. SouthStar's allegation that defendants' financial gain came at "the detriment of SouthStar," id., does not equate to an allegation that defendants acted with malice towards SouthStar. Because SouthStar does not allege that defendants conspired with the intent to injure it, SouthStar's claim for civil conspiracy fails.

Second, even if SouthStar alleged that defendants acted with the requisite conspiratorial intent, SouthStar's civil conspiracy claim still fails because defendants' alleged acts in furtherance of the conspiracy are indistinct from its allegations in support of its other causes of action. "In a civil conspiracy claim, one must plead additional facts

13

in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009), overruled on other grounds by Paradis, 861 S.E.2d at 774. Stated another way, "'[w]here the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.'" Todd v. S.C. Farm Bureau Mut. Ins. Co., 278 S.E.2d 607, 612 (S.C. 1981) (quoting 15A C.J.S. Conspiracy § 33, at 718), overruled on other grounds by Paradis, 861 S.E.2d at 780; see also Kuznik v. Bees Ferry Assocs., 538 S.E.2d 15, 21 (S.C. Ct. App. 2001) ("Because [the third party plaintiff] . . . merely realleged the prior acts complained of in his other causes of action as a conspiracy action but failed to plead additional facts in furtherance of the conspiracy, he was not entitled to maintain his conspiracy cause of action."); Doe v. Erskine Coll., 2006 WL 1473853, at *17 (D.S.C. May 25, 2006) (granting defendant's motion for summary judgment on plaintiff's civil conspiracy action because "the Complaint does not plead specific facts in furtherance of the conspiracy; instead the Complaint simply restates the alleged wrongful acts in relation to the plaintiff's other claims for damages.").

SouthStar's civil conspiracy cause of action almost exclusively regurgitates the same acts that also serve as the bases for its other claims, including tortious interference with contractual relations, conveyance to defraud a creditor, conversion, and unjust enrichment. The only alleged act that is arguably unique to SouthStar's civil conspiracy cause of action is T-Zone's filing of lawsuits against SouthStar to allegedly pressure it to

continue financing 10 Minute.  However, SouthStar does not sufficiently allege facts to show that T-Zone filed those lawsuits in furtherance of a conspiracy.  SouthStar has not alleged that those lawsuits are frivolous, and both lawsuits remain pending before this court after surviving SouthStar's respective motions to dismiss in those cases.  The court is likewise not convinced that those lawsuits were filed for an improper purpose, and Cruickshank's alleged comments do not persuade the court otherwise.  Even if the court accepted SouthStar's allegations at face value, SouthStar has not cited any authority to support its position that an action is unlawful if it is filed in part to exert pressure on a defendant or at the encouragement of other persons.  To put it simply, SouthStar's allegation that T-Zone's lawsuits were filed in furtherance of a conspiracy are conclusory and speculative.  Such a bare allegation cannot sustain a conspiracy claim that otherwise merely reincorporates wrongful acts related to other causes of action.  Therefore, the court finds that SouthStar's conspiracy claim fails because it alleges no plausible acts in furtherance of a conspiracy for which damages are not already claimed elsewhere in the complaint.  Accordingly, the court dismisses SouthStar's civil conspiracy claim sua sponte.

### 2. Fresh Start and Pershin's Participation in the Conspiracy

The court next turns to the second element of a conspiracy theory of personal jurisdiction—Fresh Start and Pershin's participation in the alleged conspiracy.  Of course, if SouthStar cannot show the existence of a conspiracy, it likewise cannot show that Fresh Start and Pershin participated in any conspiracy.  Even if SouthStar had articulated a plausible conspiracy claim, SouthStar does not plausibly allege that Fresh Start and Pershin participated in any conspiracy involving T-Zone's lawsuits against

SouthStar.  SouthStar does not allege a single fact that tends to show that Fresh Start or Pershin had any involvement in filing those lawsuits or had made any conspiratorial agreement with 10 Minute or T-Zone involving those lawsuits.  Indeed, SouthStar bases its entire allegation of a conspiracy related to those lawsuits on its call with 10 Minute and Cruickshank.  Fresh Start and Pershin were not included on that call nor, to the court's knowledge, even mentioned on it.  SouthStar merely speculates that Fresh Start and Pershin somehow participated in the bringing T-Zone's lawsuits against SouthStar, but such speculation is not enough to satisfy SouthStar's threshold showing.  Accordingly, even if SouthStar articulated the existence of a conspiracy, it can only plausibly allege that Pershin and Fresh Start participated in that conspiracy after T-Zone's lawsuits were brought and around the time 10 Minute and Fresh Start entered the Consignment Agreement.  The court finds this distinction important at the third element, discussed below.

### 3. Acts in Furtherance of the Conspiracy Amounting to Sufficient Contacts with South Carolina

Finally, SouthStar has failed to show any co-conspirator acts in furtherance of the conspiracy that amount to sufficient contacts with South Carolina and thus satisfy the third element of the conspiracy theory of personal jurisdiction.  SouthStar does not allege or argue that the court has personal jurisdiction over Fresh Start and Pershin's alleged co-conspirators, T-Zone and 10 Minute, by virtue of their conspiratorial activities.  To succeed under the co-conspirator theory of personal jurisdiction, a plaintiff cannot simply show that <u>any</u> activity by a co-conspirator subjects him or her to personal jurisdiction in the forum.  Rather, a plaintiff must plausibly show that "a co-conspirator's activities <u>in furtherance of the conspiracy</u> had sufficient contacts with [the forum] to subject that

conspirator to jurisdiction in [the forum.]"  Unspam Techs., 716 F.3d at 329 (emphasis added).  In other words, only the acts that T-Zone and 10 Minute committed in furtherance of the conspiracy can be attributed to Fresh Start and Pershin for purposes of establishing jurisdiction under the co-conspirator theory.

SouthStar alleges that "10 Minute is subject to personal jurisdiction in South Carolina by virtue of the Factoring Agreement that contains South Carolina jurisdictional provisions, and by engaging in substantial financial transactions with SouthStar in the State of South Carolina pursuant to the Factoring Agreement." ECF No. 10 at 15.  Yet SouthStar does not allege that 10 Minute entered the Factoring Agreement or completed any financial transactions thereunder in furtherance of the conspiracy.  Therefore, the court cannot attribute T-Zone's actions in the forum related to the Factoring Agreement to Fresh Start or Pershin under the co-conspirator theory of jurisdiction.

SouthStar alleges that T-Zone, on the other hand, is subject to jurisdiction in South Carolina "by virtue of voluntarily filing two (2) lawsuits against SouthStar with this Court" and by "consenting to jurisdiction with this Court in South Carolina by filing an Answer in this lawsuit without making any contest to this Court having personal jurisdiction over it." Id.  To the extent T-Zone is subject to personal jurisdiction in this state by virtue of waiver, that waiver cannot automatically be extended to Fresh Start or Pershin under the co-conspirator theory.  Certainly, T-Zone did not fail to challenge personal jurisdiction in its answer in this action in an effort to further the alleged conspiracy.  The only remaining co-conspirator act that SouthStar alleges as a basis for personal jurisdiction is T-Zone's initiation of the two lawsuits against it in South Carolina.  The court is not convinced that it has personal jurisdiction over T-Zone simply

17

because it filed two actions in this court against SouthStar. Indeed, the instant action does not appear to arise from or relate to those prior lawsuits. To be sure, SouthStar alleges that defendants filed the lawsuits against it as part of the conspiracy claimed in this action. However, as the court previously explained, SouthStar fails to allege a plausible conspiracy claim based on T-Zone's pursuit of those lawsuits or any other acts by defendants. Moreover, as the court explained above, SouthStar has not plausibly alleged that Fresh Start and Pershin had joined the alleged conspiracy at the time T-Zone filed the lawsuits. Conspiracy-based personal jurisdiction exists because co-conspirators are considered each other's agents, such that each one is bound by the acts—or jurisdictional contacts—of the other. However, a person cannot be in an agency relationship with members of a conspiracy before he or she joins the conspiracy. Based on that basic principle, it is well-established that a person cannot be liable for substantive offenses that were committed in furtherance of a conspiracy before they joined. See generally United States v. Blackmon, 839 F.2d 900, 908–09 (2d Cir. 1988); United States v. O'Campo, 973 F.2d 1015, 1023 (1st Cir. 1992). Similarly, the court will not charge Fresh Start and Pershin with a personal presence in South Carolina based on the contacts their alleged co-conspirators made with the forum before Fresh Start and Pershin joined in the alleged conspiracy. Therefore, SouthStar cannot satisfy the third element of the conspiracy theory of personal jurisdiction by relying on T-Zone's alleged act of filing the lawsuits in furtherance of the conspiracy.[2]

---

[2] It bears repeating here that no other alleged acts in furtherance of the conspiracy involved minimum contacts with South Carolina. As previously explained, the Consignment Agreement does not evince sufficient minimum contacts with South Carolina, and although SouthStar complains that certain co-conspirator acts affected it in South Carolina, that effect does not create personal jurisdiction over those actors. Thus,

In sum, because it failed to make its requisite showing at all three elements, SouthStar cannot succeed on a conspiracy theory of personal jurisdiction. As such, SouthStar has not made a prima facie showing for personal jurisdiction over Fresh Start or Pershin. SouthStar requests jurisdictional discovery to access information that could help to establish a basis for jurisdiction to the extent the court does not deny outright the motion to dismiss. "When the Plaintiff can show that discovery is necessary in order to meet the defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous." Sullivan v. Hawker Beechcraft Corp., 723 S.E.2d 835, 839 (S.C. Ct. App. 2021) (citing Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988)). However, a court should deny a plaintiff's request for jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with the forum state." Id. 723 S.E.2d at 840 (citing Tuttle Dozer-Works Inc. v. Gyro-Trac (USA), Inc., 463 F. Supp. 2d 544, 548 (D.S.C. 2006)). The court finds that conclusory and speculative assertions about Fresh Start and Pershin's contacts with South Carolina are precisely what SouthStar offers this court. SouthStar has not explained what evidence it expects to exist to support the court's exercise of specific jurisdiction over Fresh Start and Pershin, and the court strongly doubts that discovery would reveal any evidence to alter this court's decision. The court need not permit jurisdictional discovery to aid SouthStar in its fishing expedition for such evidence.

---

SouthStar rightfully does not rely on these acts in arguing that Fresh Start and Pershin's co-conspirators are subject to personal jurisdiction in South Carolina.

19

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss and sua sponte dismisses SouthStar's civil conspiracy cause of action.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**November 10, 2021**
**Charleston, South Carolina**